1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KELLY B. DAVIS,                        Case No.  1:20-cv-00276-NODJ-HBK (PC)

12              Plaintiff,                   FINDINGS AND RECOMMENDATIONS TO
                                            GRANT DEFENDANTS CHANZA, CRYER,
13        v.                                AND SHERMAN'S EXHAUSTION BASED
                                            MOTION FOR SUMMARY JUDGMENT[1]
14   DR. UGWUEZE, KHUONG PHUI, C.
     CRYER, JR., STUART SHERMAN, and        (Doc. No. 71)
15   L. CHANZA,
                                             14-DAY DEADLINE
16              Defendants.

17

18

19        Pending before the Court is the exhaustion based Motion for Summary Judgment filed by

20   Defendants Dr. L. Chanza, C. Cryer, Jr., and Stuart Sherman on August 21, 2023.  (Doc. No. 71,

21   "MSJ").[2]  Plaintiff, who is represented by counsel, filed an Opposition, (Doc. No. 78), and

22   Defendants filed a Reply.  (Doc. No. 79).  The undersigned, finding no dispute of material fact,

23   recommends Defendants' MSJ be granted.

24                    I.        BACKGROUND

25   A.  Summary of Plaintiff's Complaint

26        Plaintiff Kelly B. Davis ("Plaintiff" or "Davis"), a state prisoner, initiated this action by

27   ────────────────
     [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
28   (E.D. Cal. 2023).
     [2] Defendants Drs. Phui and Ugwueze did not join in the exhaustion based MSJ.

1  filing a pro se civil rights complaint pursuant to 42 U.S.C § 1983. (Doc. No. 1). Plaintiff

2  proceeds on his Second Amended Complaint ("SAC") as screened that alleges claims of

3  deliberate medical indifference as to Defendants: (1) Dr. Khuong Phui, (2) Dr. Ugwueze, (3)

4  Chief Executive Officer C. Cryer, Jr., (4) Warden Stuart Sherman and (5) Dentist Dr. L. Chanza.

5  (Doc. Nos. 55, 61). On December 28, 2022, counsel entered an appearance on behalf of Plaintiff.

6  (Doc. No. 56).

7      The SAC alleges that while Plaintiff was incarcerated at California Substance Abuse

8  Treatment Facility and State Prison ("CSATF") he developed an abscessed tooth which was

9  ultimately extracted, leading to medical complications and cardiac surgery because of inadequate

10  medical and dental care. (Doc. No. 54 at 2, 6). Plaintiff was diagnosed with a heart murmur as a

11  child, which requires that he receive antibiotics in advance of any dental procedure. (*Id.* at 6

12  ¶14). In September 2011, upon being admitted to CDCR custody, reception noted Plaintiff's

13  heart murmur and need for antibiotic therapy prior to any dental work. (*Id.*). Plaintiff regularly

14  received antibiotic therapy prior to having dental work performed between January 2008 and

15  August 2018. (*Id.*).

16      On September 10, 2018, Plaintiff complained to Dr. Phui and Nurse McCoy of an

17  "abscessed" tooth. (*Id.* ¶15). Plaintiff was referred to the dental clinic but received no medical

18  treatment for the condition. (*Id.*). On September 13, 2018, Dr. Edwards examined Plaintiff and

19  recommended extraction of tooth #15 after Plaintiff received "weeks of treatment for the

20  abscessed tooth." (*Id.* ¶16). On September 24, 2018, Plaintiff's wife began sending emails,

21  letters and making telephone calls to various SATF officials complaining that Plaintiff was not

22  receiving timely medical care. (*Id.* ¶17). On October 1, 2018, Plaintiff complained about

23  "multiple medical issues" to Nurse McCoy. (*Id.* ¶18).

24      On October 15, 2018, Plaintiff was summoned to the dental clinic and seen by Dr.

25  Chanza. (*Id.* ¶19). At this time, Plaintiff was experiencing "fever, chills, bone/body aches,

26  tiredness." (*Id.*). Dr. Chanza noted that Plaintiff had a heart murmur and found an abscess in

27  tooth #15 and extracted it and tooth #16 without providing Plaintiff any antibiotic therapy. (*Id.*).

28  On October 28, 2018, Plaintiff requested follow-up treatment from Dr. Phui for his symptoms

which included fever, chills, fatigue, and weight loss.  (*Id*. ¶ 20).  Defendant Phui dismissed

Plaintiff's concerns, calling him a "drug abuser," and attempted to place him in a facility for

treatment for drug users.  (*Id.*).  For four more months, Plaintiff continued to have pain, fever,

chills and lost approximately 50 pounds.  (*Id*. ¶ 21).  On January 29, 2019, Defendant Phui

ordered Plaintiff sent to an outside hospital for "higher level treatment on an emergency basis."

(*Id.*).  Plaintiff received antibiotics upon admission and subsequently underwent his first heart

surgery on February 10, 2019.  (*Id*. ¶ 22).  Plaintiff required "multiple" surgeries due to the

failure to treat Plaintiff with antibiotics prior to extraction.  (*Id.*).

   After Plaintiff returned to SATF on February 12, 2019, non-party S. Robinson and

Defendant G. Ugwueze attempted to place Plaintiff in a "drug program even though no program

existed" "to cover up the denial of adequate medical care and switch [the] focus to drug abuser in

order to obtain further, additional federal funding." (*Id.* ¶ 24).  Plaintiff subsequently underwent a

second heart surgery and was transferred from CSATF to Centinela State Prison and then back to

CSATF.  (*Id.* ¶¶ 25-29).

   Plaintiff attaches to his SAC various exhibits, including: an email dated January 29, 2019,

from Plaintiff's wife to Defendants Phui, Cryer and Sherman; the sworn declaration of Amy

Davis dated November 23, 2021; and the sworn declaration of Lacey McKenzie Douglas dated

October 10, 2021.  (*Id*. at 16-23).

   As relief, Plaintiff seeks general damages, special damages, attorneys' fees, punitive

damages, costs, and future medical costs.  (*Id.* at 14).

   **B. Defendant's Exhaustion-Based Motion for Summary Judgment**

   Defendants filed the instant exhaustion based MSJ on August 21, 2023.  (Doc. No. 71).  In

support, Defendants submit a memorandum of points and authorities (Doc. No. 71), the

declaration of Howard E. Moseley (Doc. No. 71-1) and related exhibits (Doc. No. 71-2), and the

declaration of S. Gates (Doc. No. 71-3) and related exhibits (Doc. No. 71-4).  Defendants contend

the uncontroverted evidence proves Plaintiff did not properly and fully exhaust his available

administrative remedies regarding his Eighth Amendment claims against Defendants Chanza,

Cryer, and Sherman.  (*See generally* Doc. No. 71).  More specifically, the only health care

grievance Plaintiff submitted regarding his medical complications from the dental procedure (SATF HC No. 19000340) ("Grievance 340") did not mention Dr. Chanza or describe any actions or omissions on his part, (*id*. at 9-10), nor did it name or describe Cryer or Sherman's involvement in the alleged failure to provide Plaintiff with proper medical care.  (*Id*. at 11).

### C.  Plaintiff's Opposition to Exhaustion-Based MSJ

On November 6, 2023, Plaintiff filed an Opposition.  (Doc. No. 78).  In support, Plaintiff submits a memorandum of points and authorities.  (*Id*.).

Plaintiff contends that Grievance 340 put CDCR on notice as to his claims against Defendant Chanza because "the lack of adequate dental care is . . . inextricably intertwined with, the alleged inadequate medical care and is in fact part of it."  (*Id*. at 5).  Specifically, Dr. Chanza's failure to treat Plaintiff's abscessed tooth with a prior antibiotic regimen is alleged to be the source of his later heart-related medical complications.  (*Id*.).  Thus, Plaintiff argues his grievance regarding inadequate or delayed medical treatment necessarily encompassed the dental care provided by Defendant Chanza.  (*Id*. at 5-6).

As to Defendants Cryer and Sherman, Plaintiff seeks to distinguish *Fordley v. Lizarraga*, 18 F. 4th 344 (9th Cir. 2021), which held that a prisoner plaintiff's failure to name or describe the warden's involvement in a constitutional claim constituted lack of exhaustion bars his claim in federal court.  Plaintiff contends that because this case involves allegations of Eighth Amendment deliberate medical indifference, whereas *Fordley* involved allegations of Eighth Amendment excessive use of force, *Fordley* does not apply.

However, for the reasons discussed below, Plaintiff's arguments are unavailing and fail to raise a genuine dispute of material fact as to whether he exhausted his administrative remedies as to Defendants Chanza, Cryer, and Sherman.

## II.    APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law

and (2) would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial.  *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor.  *Id.*

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of persuasion remains, however, with defendant.  *Id.*

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  The omission to an argument, document, paper, or objection is not to be construed that the Court did not consider the argument, document, paper, or objection. Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of this Order.

**B.  Exhaustion Under the PLRA**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life," including *Bivens* claims. *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion is a condition precedent to filing a civil rights claim. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. A prison's internal grievance process controls whether the grievance satisfies the PLRA exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

An inmate must exhaust available remedies but is not required to exhaust unavailable remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. *Albino*, 747 F.3d at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* If the court concludes that the prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

### C. CDCR Health Care Grievance Procedures

During the applicable time, CDCR health grievance process involved a two-step

1    procedure for addressing an inmate's health care concerns. *See* Cal. Code Regs. tit. 15,

2    § 3999.225, et seq.; (Doc. No. 71-3 at 2-3 ¶ 7).

3         First, "[t]he grievant shall complete Section A of the CDCR 602 HC and submit to the

4    HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of:

5    (1) The action or decision being grieved, or (2) Initial knowledge of the action or decision being

6    grieved." Cal. Code Regs. tit. 15, § 3999.227(b); *see also id.*, § 3999.225(n) (defining HCGO).

7    "The grievant shall document clearly and coherently all information known and available to him

8    or her regarding the issue . . . include[ing] any involved staff member's last name, first initial,

9    title or position, and the date(s) and description of their involvement.  If the grievant does not

10   have information to identify involved staff member(s), the grievant shall provide any other

11   available information that may assist in processing the health care grievance." *Id.*, § 3999.227(g);

12   *see also, e.g., Robinson v. Cryer*, 2023 WL 3007344, at *6–7 (E.D. Cal. Apr. 19, 2023), report

13   and recommendation adopted, 2023 WL 3625266 (E.D. Cal. May 24, 2023) (finding medical

14   grievance that did not identify certain defendants did not exhaust plaintiff's administrative

15   remedies with respect to those defendants).

16        Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the

17   grievant may appeal the disposition . . . to HCCAB [Health Care Correspondence and Appeals

18   Branch] . . . within 30 calendar days plus five calendar days for mailing . . . ." Cal. Code Regs.

19   tit. 15, § 3999.229(a); see also id., § 3999.225(l) (defining HCCAB).  "The headquarters' level

20   review constitutes the final disposition on a health care grievance and exhausts administrative

21   remedies . . . ." *Id.*, § 3999.230(h), *see also id.* § 3999.226(g) ("Health care grievances are

22   subject to a headquarters' level disposition before administrative remedies are deemed exhausted

23   pursuant to section 3999.230.  *A health care grievance or health care grievance appeal rejection*

24   *or withdrawal does not exhaust administrative remedies*.") (emphasis added).

25        ////

26        ////

27        ////

28        ////

**ANALYSIS**

**A.  Material Facts Regarding Exhaustion of Administrative Remedies**

Following a thorough review of the evidence submitted[3], the Court finds these material facts are deemed undisputed, unless otherwise indicated:

- During the events giving rise to this action, Plaintiff Davis was incarcerated at Substance Abuse Treatment Facility and State Prison ("SATF").  (Doc. No. 54 ¶ 3); (Doc. No. 71 at 5).

- In September 2018, Plaintiff complained to SATF medical staff about an abscessed tooth.  (Doc. No. 54 ¶ 15); (Doc. No. 71 at 5).

- Plaintiff was then referred to the dental clinic, where he received "weeks of treatment" and an eventual extraction performed by Defendant Chanza.  (Doc. No. 54 ¶¶ 16-19); (Doc. No. 71 at 5).

- Over the next few months, Plaintiff met with Dr. Phui requesting treatment of various symptoms including fever, chills, tiredness, and weight loss.  (Doc. No. 54 ¶ 20); (Doc. No. 71 at 5).

- In January 2019, Dr. Phui ordered Plaintiff's transfer to an outside hospital for emergency care.  (Doc. No. 54 ¶ 21); (Doc. No. 71 at 5).

- At the hospital, Plaintiff was diagnosed with a severe infection that had damaged his heart. (Doc. No. 54 ¶ 22); (Doc. No. 71 at 5).

- Over the next two months, Plaintiff underwent "multiple surgeries" on his heart. (Doc. No. 54 ¶¶ 22-29); (Doc. No. 71 at 5).

- On March 3, 2019, one month after Plaintiff's second surgery, he submitted a health

---

[3] The Court notes that Plaintiff did not file a response to Defendants' Statement of Undisputed Facts ("Statement") as required under the Local Rules. *See* E.D. Cal. L.R. 260(b) (directing "[a]ny party opposing a motion for summary judgment or summary adjudication [to] reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."). Thus, the Court may properly take all facts set forth in Defendants' Statement as undisputed.  Nevertheless, the Court has considered the evidence contained in Plaintiff's verified Second Amended Complaint and his Opposition in determining whether the facts are undisputed under applicable legal standards.

care grievance, Log Number SATF-HC-19000340 ("Grievance 340"). The grievance alleged "inadequate and improper medical care" by "medical staff on D yard" "resulting in life threatening injury when there should have been knowledge of a higher level of medical care based on my symptoms and labs and xray results . . ." (Doc. No. 71-4 at 10).

- According to Plaintiff, his treating physicians failed to "follow protocol to check for blood infection" after he displayed symptoms of heart enlargement, leading to his heart damage. (*Id*. at 11).

- On May 2, 2019, Plaintiff was interviewed about his grievance by a nonparty nurse before SATF's healthcare grievance reviewer, Defendant Cryer, provided the first-level response on May 8, 2019. (*Id.* at 12).

- In the response, Defendant Cryer identified multiple examinations by Plaintiff's primary care provider (Defendant Phui) between November 2018 and January 2019, when Davis was transferred to an outside hospital. (*Id.* at 12).

- Cryer recounted Plaintiff's medical history and the results of numerous diagnostic tests. (*Id.* at 13). He concluded that Plaintiff's medical providers provided appropriate care, correctly followed departmental policies and procedures, and denied the grievance. (*Id.* at 12-13).

- In July 2019, Plaintiff appealed the decision to the final, headquarters level of review. (*Id.* at 6). In September 2019, the Headquarters Level response denied Plaintiff's grievance, finding that Plaintiff's primary care providers were not negligent in their care. (*Id.* at 8-9).

- There is no record of Davis submitting any other healthcare grievance in 2019. (*See* Doc. No. 71-4 at 5-6).

- Davis submitted three additional healthcare grievances between 2020 and 2022. (*Id.* at 5). Two of those grievances concerned medication distribution, and the third concerned COVID-19 masking procedures. (*Id.*). None of the three grievances involved any of the allegations in the Second Amended Complaint. (*Id.*).

- There is no record of Plaintiff submitting any non-healthcare-related grievances between 2019 and 2022 relating to any of the allegations in the SAC.  (Doc. No. 71-1 at 3 ¶¶ 8-9).  Although Plaintiff submitted four non-healthcare-related grievances during that period, none of the grievances were appealed or exhausted, and both appeared to address complaints with Davis's prison classification.  (Doc. No. 71-2 at 2, 4); (Doc. No. 71-1 at 4 ¶ 10).

**B.  Failure to Exhaust SATF-HC-19000340 as to Defendant Chanza**

It is uncontested that Plaintiff filed and exhausted only one healthcare grievance concerning his claims in this lawsuit: Grievance Log No. SATF-HC-19000340.  (Doc. No. 71-3 at 3 ¶ 10; *see also* Doc. No. 71-4 at 8-10).  It is also uncontested that the grievance makes no explicit mention of the dental care Plaintiff received, nor does it name Defendant Chanza.  The grievance complains about "inadequate and improper medical care" by "medical staff on D yard" "resulting in life threatening injury when there should have been knowledge of a higher level of medical care based on my symptoms and labs and xray results . . ."  (Doc. No. 71-4 at 10).  Plaintiff asserts these allegations are sufficient to have put the institution on notice as to the nature of his claims, which naturally encompassed not only his medical care but also his dental care.  (Doc. No. 78 at 5).

The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Pertinent here, two regulations required Plaintiff to "list all staff member(s) involved and describe their involvement in the issue": Cal. Code Regs. tit. 15, § 3084.2(a)(3) and Cal. Code Regs. tit. 15, § 3482(c)(2) (same).  Plaintiff failed to either list or describe any conduct by Defendant Chanza.

In certain circumstances, a Plaintiff's failure to name an individual in a grievance may not be fatal.  For example, in *Reyes v. Smith*, plaintiff filed a health care grievance regarding his institution's gradual termination of his access to morphine for pain management.  810 F.3d 654 (9th Cir. 2016).  The institution denied Plaintiff's grievance and appeals and noted in its responses that the prison's Pain Management Committee ("PMC") had "recommended against

10

narcotics." *Id*. at 656.  After Plaintiff filed suit against two members of the prison's PMC and other prison officials, the district court granted an exhaustion-based motion for summary judgment as to the two PMC members because they had never been named in Plaintiff's health care grievances, contrary to Cal. Code Regs. tit. 15 § 3084.2(a) (2015). *Id*. at 656-57.  The Ninth Circuit reversed, noting the explicit reference to the PMC in the institution's responses in finding that Plaintiff's grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit—denial of pain medication by the defendant doctors [because] [p]rison officials . . . plainly knew that the Pain Management Committee, of which Drs. Smith and Heatley and Smith were members, had decided Reyes should not receive the medication . . ." *Reyes*, 810 F.3d at 659.  Thus, even though Reyes had not named the specific defendants in his grievance and appeals, the Court found that the prison and those defendants were on notice of the nature of Reyes' claims.  The Ninth Circuit also held that where the prison did not enforce a procedural rule, such as the requirement of naming all involved individuals, but instead addressed a grievance on the merits, it could not later enforce that rule so long as it was on notice of the claim.  *Id*. at 658.

Here, Plaintiff cannot credibly argue that Grievance 340 put prison officials on notice of his claims as to either his dental care or any actions undertaken by Defendant Chanza.  The PLRA requires "proper exhaustion," which "demands compliance with a prison's deadlines and other critical procedural rules."  *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 742 (9th Cir. 2021). That means Plaintiff was required to identify Dr. Chanza as a party responsible for the alleged wrongdoing or, at a minimum, notify prison officials that he took issue with his "dental care" as opposed to his the "medical care" he received.  *See, e.g.*, Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2019) (requiring inmates to "list all staff member(s) involved and describe their involvement in the issue"); Cal. Code Regs. tit. 15, § 3482(c)(2) (same).  Plaintiff did neither.

Indeed, to construe the wording in Grievance 340 as placing correctional officials on notice that Plaintiff was grieving dental care performed by Defendant Chanza is belied by the institution and headquarters' responses.  In the first-level response to Davis's grievance, CEO Cryer focused entirely on the medical care provided by Davis's primary care providers.  (Doc.

1    No. 71-4 at 12-14).  Cryer summarized the various diagnostic exams provided by Dr. Phui and the

2    various dates Phui examined Davis.  (*Id*.).  There are no indications officials were aware that

3    Plaintiff was grieving his dental care or had reason to suspect that it was the source of his alleged

4    injury.

5           Likewise, the headquarters-level response focused on care by Davis's primary care

6    providers.  (*Id*. at 1–2).  Because neither response mentioned Dr. Chanza nor dental care Davis

7    received, the Court cannot infer that prison officials had notice of those claims.  Although

8    Plaintiff later learned that Defendant Chanza's failure to administer antibiotics may have caused

9    his infection and later medical complications, he failed to include these allegations in any

10   grievance.  Thus, Plaintiff failed to exhaust his claims as to Defendant Chanza.  Accordingly, the

11   undersigned finds no genuine dispute of material fact that Plaintiff failed to exhaust his

12   administrative remedies as to Defendant Chanza and will thus recommend that Defendants' MSJ

13   be granted as to Defendant Chanza.

14          **C.  Failure to Exhaust SATF-HC-19000340 as to Defendants Cryer and Sherman**

15          Likewise, it is uncontested that Plaintiff's health care grievance makes no reference to

16   Defendants Cryer or Sherman, nor does it make any reference to any conduct undertaken by

17   either Defendant.  The parties' argument regarding whether Plaintiff exhausted his claim as to

18   Defendants Cryer and Sherman centers around the applicability of *Fordley v. Lizarraga*, 18 F.4th

19   344 (9th Cir. 2021).  In *Fordley*, a California inmate submitted an administrative grievance

20   alleging an assault by four correctional officers. 18 F.4th at 347.  The inmate later filed suit

21   against not only the officers, but also the prison warden for deliberate indifference to the officers'

22   violation of his constitutional rights.  *Id*. at 349.  The Ninth Circuit dismissed the claim against

23   the warden, holding that the inmate was required to exhaust his claim as to the warden, but failed

24   to do so.  Although the claims all arose from the same incident, the Court noted that the

25   grievances "did not name [the] warden" or "describe the warden['s]" involvement.  *Id*.  The mere

26   fact that the inmate's claims against the warden related to the officers' conduct was not enough to

27   "put the prison on notice that [the plaintiff] intended to assert a deliberate indifference claim

28   against the warden."  *Id*.  Thus, the inmate's failure to comply with prison grievance regulations

1    rendered the claim against the warden unexhausted.  *Id.*

2           Defendants argue the same reasoning applies here because Plaintiff's grievance did not

3    "name" or "describe" either CEO Cryer or Warden Sherman's involvement in any alleged

4    wrongdoing.  The Court agrees.  The holding in *Fordley* is consistent with Supreme Court case

5    law referenced above, which requires compliance with the prison's applicable grievance

6    procedures to exhaust administrative remedies under the PLRA.  *Jones*, 549 U.S. at 218.  Here,

7    Plaintiff failed to "list all staff member(s) involved and describe their involvement in the issue" as

8    required by Cal. Code Regs. tit. 15, §§ 3084.2(a)(3) and 3482(c)(2).  Nor did Plaintiff's grievance

9    otherwise put the prison on notice of his intent to sue Defendants Cryer and Sherman by

10   referencing their involvement in any alleged misconduct.  The fact that Plaintiff's allegations

11   against Cryer and Sherman are related to his exhausted claims against Dr. Phui and Dr. Ugwueze

12   is insufficient to exhaust them under the PLRA.

13          Plaintiff's only argument to the contrary is that *Fordley* involved Eighth Amendment

14   excessive force claims and this case involves Eighth Amendment deliberate medical indifference;

15   Plaintiff also asserts that his claim is distinguishable from *Fordley* because it arose from a

16   "*medical* treatment facility" as opposed to a prison.  (Doc. No. 78 at 6) (emphasis in original).

17   However, it is well-known that SATF—the Substance Abuse Treatment Facility and State Prison

18   is in fact a prison.[4]  And Plaintiff can point to no language in *Fordley* that limits the court's

19   holding to the context of Eighth Amendment excessive use of force claims.

20          Thus, there is no genuine dispute of material fact as to whether Plaintiff's Eighth

21   Amendment claims as to Defendants Cryer and Sherman were unexhausted.  Thus, the

22   undersigned will recommend that Defendants' MSJ be granted as to these Defendants Cryer and

23   Sherman.

## CONCLUSION

25          The Court finds the undisputed record demonstrates Plaintiff did not fully exhaust his

---

[4] *See* https://www.cdcr.ca.gov/facility-locator/satf/ ("The primary mission of the California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF/CSP) is to protect the public by ensuring those inmates who are remanded to the California Department of Corrections and Rehabilitation (CDCR) remain in custody, until they are scheduled to be released.") (last visited: February 7, 2024).

1  available administrative remedies as to Defendants Dentist Dr. Chanza, Chief Executive Cryer, or

2  Warden Sherman.  Because Plaintiff failed to fully exhaust his administrative remedies as

3  required by 42 U.S.C. § 1997e(a), these three Defendants are entitled to summary judgment as a

4  matter of law.

5          Accordingly, it is hereby **RECOMMENDED**:

6      1.  Defendants Chanza, Cryer, and Sherman's Motion for Summary Judgment (Doc.

7         No.71) be GRANTED and Defendants Chanza, Cryer, and Sherman's be

8         **DISMISSED** from this action.

9      2.  This action be permitted to proceed against only Defendants. Defendants Drs. Phui

10         and Ugwueze and the Clerk to be directed to correct the docket to reflect the same.

11                                        **NOTICE**

12          These Findings and Recommendations will be submitted to the United States District

13  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

14  of the date of service of these Findings and Recommendations, a party may file written objections

15  with the Court.  The document should be captioned, "Objections to Magistrate Judge's Findings

16  and Recommendations." A party's failure to file objections within the specified time may result in

17  waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing

18  *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19

20  Dated:   February 9, 2024

21                                         HELENA M. BARCH-KUCHTA

22                                         UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28